BAESCHLIN & SHUMAN V. CHAMBERLAIN BANKING HOUSE.

FILED JANUARY 21, 1903. No. 12,552.

Commissioner's opinion, Department No. 1.

1. **Agent:** DRAFT: PAYMENT: ABSOLUTE AGREEMENT: PLAINTIFF: AGREEMENT: CONFLICTING EVIDENCE. Where plaintiff alleges an absolute agreement to pay drafts of an agent if cashed by plaintiff, and defendants set up a conditional agreement, and the evidence is conflicting, defendants should be allowed to prove facts showing that under the agreement, as claimed by them, there was nothing due the drawer and no authority to make the draft.

2. **Bank:** AGENT: DRAFT: PLEA: DRAWEE: BAD FAITH: ADMISSION OF CERTAIN EVIDENCE. In case of a draft made through a bank by an agent on a plea by the drawee of bad faith upon the bank's part, and when there is evidence showing knowledge by it of the relations of the drawer and drawee, evidence tending to show a misappropriation of the proceeds of the draft by the agent for the bank's benefit, and with its knowledge, should be admitted.

3. **Former Agent:** ACTUAL AUTHORITY: PRINCIPAL: BANK: RETENTION OF PROCEEDS. Where a former agent, without actual authority, and with nothing due him, has drawn on his former principal through a bank instructed by the principal to pay such drafts, it is the bank's duty, as soon as it learns of the agent's lack of authority, to retain any proceeds of the draft which have not been paid out.

4. **Suit by Bank:** AMOUNT PAID: NOTICE OF AGENT'S WANT OF AUTHORITY: RECOVERY. In a suit by the bank to recover for the amount paid on such a draft, it can recover only the amount paid before receiving notice of the agent's want of authority. That the remainder had been previously placed to the agent's credit in the bank, is not sufficient.

ERROR from the district court for Johnson county. **Action** by Chamberlain Banking House against Baeschlin & Shuman, upon inland bill of exchange. Tried below before LETTON, J. Judgment for plaintiff. *Reversed.*

*Samuel P. Davidson,* for plaintiffs in error.

*M. B. C. True, contra.*

Syllabus by court; catch-words by editor.

HASTINGS, C.

This is an action on a draft drawn by one House upon the defendants, Baeschlin & Shuman, and alleged by plaintiff to have been cashed for the defendants at their request and under an agreement that they would honor and pay such drafts by House, who was their agent at Tecumseh, Nebraska, in the purchase of poultry. The draft was drawn April 13, 1899, and plaintiff says it paid it on that day. The defendants admit plaintiff's incorporation and their partnership and deny the other allegations of the petition, and especially deny making any agreement to pay all drafts by House and deny his agency for them; deny his drawing the draft; deny any agreement to pay drafts except for money to pay for poultry purchased by House and shipped to defendants, which drafts were to be accompanied by a statement of poultry purchased with the money. They allege that their contract with House, made with plaintiff's knowledge, was that House was to buy poultry and consign it to defendants and defendants were to honor a draft for the money to pay for it, but not unless the draft was accompanied by a statement, and that they would honor no draft for any other purpose. They allege that the draft in question was drawn and the proceeds used to pay House's indebtedness to plaintiff, which he owed prior to becoming defendants' agent. They also say that when this draft was drawn House had received more than enough money to pay for all the poultry purchased for consignment to defendants and that plaintiff knew this. Plaintiff replied by general denial. The jury returned a verdict for $117 and the defendants bring error, under twenty-three assignments, in this court. Their brief, however, complains only of error in refusing evidence that on the day prior to the drawing of this draft they had a complete settlement with House and paid him in full; error, also, in refusing evidence of the condition of House's account with plaintiff upon December 27 and 29, be-

fore, and April 14 and 17, after, the drawing of the draft; also error in refusing evidence that no more poultry was bought for defendants by House after the settlement of April 12. Complaint is also made of instruction 6, which told the jury that, if they found for plaintiff, to find for the amount of the draft. It is claimed that only $50 was paid out on this draft,—the other $50 being put to House's credit in plaintiff's bank,—and that there is no evidence to show that it was ever paid to him. Complaint is also made because the instructions merely told the jury that the defendants deny liability on the draft and their defense would be found more specifically set out in the answer which the jury would have. Complaint is also made of the refusal to instruct the jury to find for the defendants if plaintiff knew that the money was drawn for other purposes than payment for poultry. Complaint is also made of a refusal to instruct the jury as to the effect of a telegram sent to plaintiff by defendants in response to one of plaintiff's to them, refusing to honor any more drafts. Complaint is also made of the refusal of instruction 4 asked by defendants, to the effect that the jury were to find for defendants if the money was drawn for any other purpose than buying poultry. The refusal of instruction 5, which told the jury to find for defendants if they found that a settlement had been had before the drawing of this draft, between House and the defendants, and also found that plaintiff knew of the contract between House and defendants, is complained of.

The fundamental question in the case seems to be, what was the agreement between plaintiff and defendants with regard to honoring House's drafts, and to what extent was there a duty on plaintiff's part to ascertain the purpose for which the money was drawn? Plaintiff claims an absolute agreement to honor all of House's drafts for less than $100. Defendants deny any agreement except to honor drafts for poultry which were accompanied by a statement of the consignment. Knowledge of the relationship between House and the defendants on plaintiff's part appears.

Under such circumstances, actual knowledge on its part that this money had been or would be misappropriated, would prevent any recovery. The trial court, in substance, told the jury to find for the plaintiff if they found that the defendants had agreed to honor all drafts, to a reasonable amount, drawn on them by House, and to find for the defendants if the drafts were to be honored and paid only when a statement of poultry bought and shipped accompanied the draft, and that they should either find for the defendants or for plaintiff to the full amount of the draft. The court also, at defendants' request, instructed as follows: "The court instructs the jury that if you believe from the evidence that it was specially and definitely agreed by and between defendants and Al. House, mention[ed] in the pleadings, with the knowledge of the plaintiff, that said Al. House should buy poultry consisting of chickens, ducks and geese and consign the same to defendants, and that defendants would honor such drafts drawn upon them by said House for the sole and only purpose of paying for such poultry so consigned, provided a statement of the amounts and character of the poultry so purchased by the money so drawn for should in every instance accompany such draft; and if you further believe from the evidence that no such statement accompanied the draft in controversy and that the money for which the draft was drawn was not used in paying for such poultry consigned to defendants, then and in that case you will find for the defendants." By the last portion of this instruction the jury were told that the fact that the money was not used for buying poultry consigned to defendants, if they found it to be a fact, was vital. It seems clear that the testimony tendered as to the settlement and the paying out for all poultry on and prior to April 12, which was rejected by the court, bore directly upon this claim and should have been admitted in order to show that the proceeds of this draft were not and could not have been used for any such purpose. It would seem that the rejection of this evidence was error. Plaintiff says it was rejected because knowl-

edge of this settlement was not brought home to plaintiff. Of course, if plaintiff knew of such fact, there could be no recovery. But the verdict may have been, for aught the record shows, based on defendants' theory of the contract and rendered for lack of proof that the draft was not for poultry payments.

It would also seem that the trial court, in telling the jury to find for plaintiff if they found, under the agreement, that plaintiff was to honor all drafts up to a reasonable amount, and to find for defendants if they found no statement accompanied this draft, and that the agreement required such statement, unduly narrowed the issues. Whatever the agreement between the plaintiff and defendants may have been, it is alleged,—and there is evidence strongly tending to support such allegation,—that the relationship between House and the defendants was well known to plaintiff. Under such circumstances, it would seem clear that knowledge on the plaintiff's part that this money was being misappropriated would be a defense, and it certainly would be a defense that at the time of the refusal to pay the draft the money had not been paid out to House. Counsel do not claim that the evidence shows that it had. The utmost they claim is that $50 had been paid out, and the other $50 had been placed by the plaintiff to House's credit and that the evidence does not show that it had not been paid out before notice of dishonor of the draft was received.

No authorities are cited to the proposition that such a placing to House's credit would put the money beyond plaintiff's control or authorize a recovery for it if it was not really due to House. It would seem that the bank, in giving Mr. House credit for this amount, and failing to charge it back to him on learning of the draft's dishonor, must have taken the risk of defendants' being indebted to House to that amount and must be held not entitled to recovery as to this $50 unless the money for the draft was actually due to House from the defendants. The instructions given, and rulings as to evidence, indicate clearly

Baeschlin v. Chamberlain Banking House.

that in the mind of the trial court the sole question in the case was the agreement about paying drafts. The court's action was evidently based on the conclusion that if defendants had absolutely agreed to honor House's drafts through plaintiff for amounts of $100 and less, it did not matter whether or not anything was due House from defendants, or whether or not the money was applied to his indebtedness to plaintiff. The evidence, as above suggested, is conclusive that plaintiff knew the relationship between House and the defendants and the purpose for which the drafts which were paid were drawn. Plaintiff was bound to take notice, as we think, that this money was advanced to a purchasing agent of defendants, even though the terms of its agreement were as it claimed. The rejected evidence of the condition of House's account with plaintiff tended to show a misappropriation not only with plaintiff's knowledge, but for its benefit. If defendants could show this, it should defeat a recovery. So, too, the fact, if it is a fact, that only $50 had been paid out on the draft before its dishonor, should go to reduce damages.

It is recommended that the judgment of the district court be reversed, and the cause remanded for further proceedings.

KIRKPATRICK and LOBINGIER, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.